UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AGUSTIN TORRES GONZALEZ,

                          Plaintiff,

        -against-                                    3:17-CV-373 (LEK/DEP)

DELAWARE COUNTY, *et al.*,

                          Defendants.

_____

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Agustin Torres Gonzalez commenced this action on March 17, 2017, in New

York Supreme Court, Delaware County, against the Margaretville Central School District

("MCSD") and Nancy Millen (collectively, the "MCSD Defendants"); the New York State Child

Abuse and Maltreatment Register, Stephen Hahl, and Brian Dengler (collectively, the "State

Defendants"); and Delaware County, the Commissioner of the Delaware County Division of

Social Services, and Cynthia Bogdan-Cumpston (collectively, the "County Defendants"). Dkt.

No. 3 ("Complaint"). On April 4, 2017, Defendants removed the case to this Court. Dkt. No. 1

("Notice of Removal").

Plaintiff brings this action under 42 U.S.C. §§ 1983 and 1985 and New York law,

alleging that Defendants violated his constitutional rights when they improperly and repeatedly

interviewed his six-year-old niece, I.T., which eventually led to his arrest. Compl. On

May 11, 2017, Defendants moved to dismiss the Complaint in three separate motions. Dkt.

Nos. 14 ("MCSD Motion"), 16 ("State Motion"), 17 ("County Motion") (collectively, the

"Motions"). Plaintiff opposed the Motions on June 28, 2017, and also moved for leave to file an

amended complaint. Dkt. Nos. 24 ("Cross-Motion"), 24-5 ("Proposed Amended Complaint"). Defendants opposed the Cross-Motion and offered further support for their Motions on July 24, 2017. Dkt. Nos. 27 ("MCSD Opposition"), 29 ("State Opposition"), 30 ("County Opposition").[1] For the reasons stated below, the Cross-Motion is granted, the State Motion is granted in part and denied in part, and the MCSD and County Motions are granted.

## II.    BACKGROUND[2]

On December 17, 2015, Plaintiff was a resident of Fleischmanns, New York, where he lived in a house with his extended family. PAC ¶¶ 14–15. This family included his sister, Cirila, and her six-year-old daughter, I.T. Id. ¶ 15. Plaintiff, Cirila, and I.T. shared the second floor of the house, and Plaintiff had his own bedroom. Id. The family speaks Spanish at home, though I.T. is bilingual and Plaintiff speaks "English well enough to get around." Id. ¶¶ 17–18.

The sequence of events leading to Plaintiff's arrest began on the morning of December 17th. First, I.T. was brought to the office of Nancy Millen, a guidance counselor at the

---

[1] Defendants oppose the Cross-Motion on futility grounds, arguing that the PAC does not remedy the purported deficiencies of the Complaint. E.g., County Opp'n at 4. Therefore, the Court will consider Defendants' arguments in light of the PAC.

[2] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the PAC are accepted as true and form the basis of this section. E.g., Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor"). However, Plaintiff also attached additional materials to the PAC. See Dkt. Nos. 24-2 ("State Court Complaint"), 24-3 ("Hearing Transcript"). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered [on a motion to dismiss]." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). "When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true." Rozsa v. May Davis Grp., Inc., 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).

Margaretville Central School. Id. ¶ 20. Millen asked to see I.T. because she had received an

anonymous tip that I.T.'s brother hit I.T. when Cirila worked late. Id. ¶ 22. Millen interviewed

I.T. without following recommended procedures and without asking for Cirila's consent. Id. ¶ 24.

After the interview, Millen contacted the Delaware County Department of Social Services

("DSS"), reporting "a child being left alone." Id. ¶ 25.

Cynthia L. Bogdan-Cumpston, a caseworker employed by DSS's Child Protective

Services unit, responded to Millen's report. Id. Bogdan-Cumpston traveled to Margaretville

Central School on December 17th and interviewed I.T. Id. ¶ 26. Like Millen, Bogdan-Cumpston

failed to follow recommended procedures while interviewing the child. Id. ¶¶ 26–28. Although

I.T. denied that her brother hit her, Bogdan-Cumpston did not end the interview; she also asked

I.T. about alcohol and drugs, misbehavior, and whether anyone had touched her "private parts."

Id. ¶¶ 31–32. I.T. responded affirmatively that Plaintiff had touched her private parts. Id. ¶ 32.

I.T. then received anatomical hand puppets to facilitate further discussion about this touching,

but I.T. did not respond positively to additional questions. Id. ¶ 33.

On the advice of her supervisor, Bogdan-Cumpston contacted the New York State Police,

which sent Investigators Brian Dengler and Steven Hahl and Trooper Adams to Margaretville

Central School. Id. ¶ 35; Dkt. No. 24-3 ("Hearing Transcript") at 131.[3] Bogdan-Cumpston,

Millen, Dengler, Hahl, and Adams re-interviewed I.T. in the presence of Cirila. Id. ¶¶ 38–39. I.T.

denied—by shaking her head negatively—that Plaintiff touched her. Id. ¶ 39. Dengler and Hahl

described I.T.'s response as "negative results" in their report. Id. ¶ 40; see also Dkt. No. 24-2,

---

[3] Trooper Adams is not a defendant in this case, and the PAC does not identify him.
However, Hahl testified that Adams was also present at the Margaretville Central School on
December 17th. Hr'g Tr. 131.

Ex. C ("Police Report") at 2. Bogdan-Cumpston then asked I.T. if she would prefer to speak to her alone; I.T. responded, "Yes." Id. ¶ 42. Bogdan-Cumpston re-interviewed I.T., who said that Plaintiff inappropriately touched her sometime between 2014 and early 2015. Id. ¶ 45.

Bogdan-Cumpston, Dengler, and Hahl then visited I.T. and Plaintiff's house. Id. ¶ 48. Bogdan-Cumpston did not find anything unacceptable at the house. Id. ¶ 50. Nevertheless, Dengler and Hahl asked Plaintiff to accompany them to the police station in Margaretville to discuss the accusations against Cirila regarding I.T. being left alone. Id. ¶ 49. At the station, Dengler and Hall interrogated Plaintiff about touching I.T. Id. ¶ 51. Dengler and Hahl did not offer Plaintiff the assistance of an interpreter. Id. Dengler and Hahl allege that Plaintiff said that he accidentally touched I.T.'s private parts on at least one occasion. Id. ¶ 52; Police Report at 3. Plaintiff denies that he made this statement; instead, Plaintiff told the investigators that he accidentally touched I.T.'s leg after I.T. sat on top of Plaintiff's knee. PAC ¶ 52.

Following this interrogation, and upon the advice of Delaware County Acting District Attorney John Hubbard, Police Report at 3, Plaintiff was arrested and charged with felony sexual abuse in the first degree, PAC ¶ 54. Plaintiff was arraigned before a town justice and placed in custody for approximately one hour until his employer posted his bail. Id. ¶¶ 54–56. Due to the order of protection issued in connection with his arrest, Plaintiff could not return to his house, nor could he contact his family by phone. Id. ¶ 57.

On April 13, 2016, a felony hearing was held regarding the charges against Plaintiff in front of Town Justice John R. Fairbairn III. Hr'g Tr. 1. On September 21, 2016, Justice Fairbairn dismissed all charges against Plaintiff. PAC ¶ 63; Dkt. No. 24-2, Ex. D ("Amended Decision") at 1–3.

4

III.    **LEGAL STANDARD**

    **A.  Motion to Dismiss**

    To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the possibility of misconduct based on the pleaded facts, the pleader has not demonstrated that he is entitled to relief, and the action is subject to dismissal. Id. at 678–79. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in original) (quoting Todd v. Exxon Corp., 275 F.3d 191, 203 (2d Cir. 2001)). Presented with "two plausible inferences that may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." Id.

### B.  Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure allows a plaintiff to amend his complaint more than twenty-one days after service of a motion to dismiss "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." Id. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). A motion to amend under Rule 15(a) "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 603–04 (2d Cir. 2005) (quoting Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)); see also Dunn v. Albany Med. Coll., No. 09-CV-1031, 2010 WL 2326127, at *8 (N.D.N.Y. June 7, 2010) (Kahn, J.) ("Leave to amend a complaint is not automatic, and a court may deny a motion to amend for good cause 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" (quoting Foman, 371 U.S. at 182)).

IV.    **DISCUSSION**[4]

Plaintiff has brought this action pursuant to § 1983, which provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under the color of state law. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

**A.  False Arrest**

*1.  Applicable Law*

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV; accord Garenani v. County of Clinton, 552 F. Supp. 2d 328, 333 (N.D.N.Y. 2008). "The unreasonable seizure of a person in the form of a false arrest and imprisonment is violative of the Fourth Amendment and actionable under § 1983." Garenani, 552 F. Supp. 2d at 333.

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). To prove the elements of false arrest under New York law, a plaintiff must show that "(1) the defendant intended to confine plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement,

---

[4]  The PAC does not assert claims against defendants Commissioner of the Delaware County Department of Social Services, John or Jane Does, or the New York State Child Abuse and Maltreatment Register. Therefore, these defendants are dismissed from this action.

and (4) the confinement was not otherwise privileged." Garenani, 552 F. Supp. 2d at 333

(quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

"The existence of probable cause to arrest is a complete defense to a claim of false arrest

and imprisonment; in other words, it renders the confinement privileged." Id. (citing Bernard,

25 F.3d at 102 and Weyant, 101 F.3d at 852). "In general, probable cause to arrest exists when

the officers have knowledge or reasonably trustworthy information of facts and circumstances

that are sufficient to warrant a person of reasonable caution in the belief that the person to be

arrested has committed or is committing a crime." Weyant, 101 F.3d at 852. "A district court

must look to the 'totality of the circumstances' in deciding whether probable cause exists to

effect an arrest." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (quoting Illinois v.

Gates, 462 U.S. 213, 233 (1983)).

Even if there was not probable cause to arrest the plaintiff, the defense of qualified

immunity entitles public officials to freedom from suit, as a result of the consequences of the

performance of their discretionary duties, when "(1) their conduct does not violate clearly

established constitutional rights, or (2) it was objectively reasonable for them to believe their acts

did not violate those rights." Martinez v. Simonetti, 202 F.3d 625, 633–34 (2d Cir. 2000)

(quoting Weyant, 101 F.3d at 857). Qualified immunity is an affirmative defense, and, as such,

defendants bear the burden of proving that the privilege of qualified immunity applies. Coolick v.

Hughes, 699 F.3d 211, 219 (2d Cir. 2012). In considering a qualified immunity defense, courts

should not be "concerned with the correctness of the defendants' conduct, but rather the

'objective reasonableness' of their chosen course of action given the circumstances confronting

them at the scene." <u>Martinez</u>, 202 F.3d at 634 (quoting <u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2d Cir. 1995)).

"[I]n the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show 'arguable' probable cause." <u>Martinez</u>, 202 F.3d at 634 (citing <u>Lee v. Sandberg</u>, 136 F.3d 94, 103 (2d Cir. 1987)). "An officer's determination is objectively reasonable"—and thus, arguable probable cause is demonstrated—when "officers of reasonable competence could disagree on whether the probable cause test was met." <u>Jenkins</u>, 478 F.3d at 87 (quoting <u>Lennon</u>, 66 F.3d at 423–24). As the Second Circuit explained in <u>Jenkins</u>, "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause . . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of the arrest did not add up to probable cause, the fact that it came close does not immunize the officer." <u>Id.</u>

### 2. Brian Dengler and Steven Hahl

It is undisputed that Investigators Dengler and Hahl (collectively, the "Arresting Officers") were involved in arresting Plaintiff, that he was aware of their actions, and that he did not consent to them. The Arresting Officers argue that they had probable cause to arrest Plaintiff, which is a complete defense to an action for false arrest. Dkt. No. 16-1 ("State Defendants' Memorandum") at 9–10. Alternatively, they argue that their actions in arresting Plaintiff are shielded by qualified immunity. <u>Id.</u> at 10–13.

Under New York law, and as relevant to Plaintiff's alleged offense, a person is guilty of felony sexual abuse in the first degree when "he or she subjects another person to sexual contact . . . when the other person is less than eleven years old." N.Y. Penal Law § 130.65(3).

"Sexual contact" is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party." N.Y. Penal Law § 130.00(3). "Because the question of whether a person was seeking sexual gratification is generally a subjective inquiry, it can be inferred from the conduct of the perpetrator." People v. Beecher, 639 N.Y.S.2d 863, 865 (App. Div. 1996).

"The existence of probable cause turns on what information [the Arresting Officers] had at the time of Plaintiff's arrest." Lozada v. Weilminster, 92 F. Supp. 3d 76, 89 (E.D.N.Y. 2015). The Arresting Officers rely on three elements in their argument that probable cause existed at the time of Plaintiff's arrest: (1) I.T.'s statements to Bogdan-Cumpston; (2) Plaintiff's statement to them; and (3) the advice of the A.D.A. Hubbard. State Opp'n at 5. However, at this preliminary stage of the litigation, the Court cannot find that probable cause existed as a matter of law. See Ward v. City of New York, No. 08-CV-7380, 2010 WL 3629536, at *1–2 (S.D.N.Y. Sept. 17, 2010) ("The existence of probable cause depends on the totality of the circumstances, and the full circumstances of [Plaintiff's] arrest are not in the record yet."); Araujo v. City of New York, No. 08-CV-3715, 2010 WL 1049583, at *5 (E.D.N.Y. Mar. 19, 2010) ("Discovery may plausibly reveal that the [officers] lacked a reasonable basis for believing either (1) that a crime had been committed, or (2) that plaintiff was the perpetrator."). On the record before the Court, neither I.T.'s statements to Bogdan-Cumpston nor Plaintiff's disputed statement to the Arresting Officers provide, necessarily, a reasonable basis for believing that Plaintiff committed sexual abuse in the first degree. The record also does not contain evidence regarding the conversation between the Arresting Officers and Hubbard that occurred prior to Plaintiff's arrest. Therefore, the Court cannot determine whether Hubbard received accurate information before providing his advice.

10

a.  I.T.'s Statements to Bogdan-Cumpston

As a general rule, "a law enforcement official has probable cause to arrest if he received

his information from some person, normally the putative victim or eyewitness, unless the

circumstances raise doubt as to the person's veracity." Araujo, 2010 WL 1049583, at *5 (quoting

Penetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)). Since I.T. was six years old on December

17, 2015, and she allegedly reported incidents of abuse that occurred eight to twenty-four months

earlier, the veracity of her statements is at issue. Simuro v. Shedd, 176 F. Supp. 3d 358, 378

(D. Vt. 2016) ("Police officers must exercise extreme caution in crediting the statements of

young children." (citing United States v. Shaw, 464 F.3d 615, 624 (6th Cir. 2006) and Stoot v.

City of Everett, 582 F.3d 910, 920 (9th Cir. 2009))); see also N.Y. Crim. Proc. Law § 60.20

(providing special procedure to determine the testimonial capacity of witnesses who are less than

nine years old). While courts in this District have found that a teenager's "allegations alone were

enough to give rise to probable cause," Jean v. City of New York, No. 09-CV-801, 2011 WL

4529634, at *4 (E.D.N.Y. Sept. 28, 2011), aff'd, 512 F. App'x 30 (2d Cir. 2013), allegations by

six-year-old complainants raise more concern, Simuro, 176 F. Supp. 3d at 378; Araujo, 2010 WL

1049583, at *5; see also Wesley v. Campbell, 779 F.3d 421, 430 (6th Cir. 2015) ("[I]t appears

that no federal court of appeals has ever found probable cause based on a child's allegations

absent some other evidence to corroborate the child's story.").

In addition, the record before the Court regarding I.T.'s statements lacks significant

details. It is unclear whether the Arresting Officers knew when the alleged abuse occurred or for

how long Plaintiff allegedly touched her or on how many occasions. Compare Police Report at 3

(describing touching on one occasion), with Hr'g Tr. 185 (describing touching on "a few

11

occasions"). These details are vital in determining whether a reasonable officer could find I.T.'s statements credible and whether a reasonable officer could believe that Plaintiff touched I.T. for sexual gratification. Compare Beecher, 639 N.Y.S.2d at 865 ("[I]t can be inferred that defendant was seeking sexual gratification from his act of placing his hand on the victim's thigh and genitalia, the sexually explicit questions he posed, his request not to tell anyone and his acknowledgment that he knew that what he did was wrong."), with People v. Guerra, 577 N.Y.S.2d 296, 297–98 (App. Div. 1991) (holding that defendant did not touch victim with the intent to obtain sexual gratification, because "[a]ll of the evidence in this case indicates that the defendant's touching of the victim occurred within the context of a game which was not sexual in nature").

On the limited record currently before the Court, no reasonable officer could conclude that I.T.'s statements were sufficient on their own to provide probable cause to arrest Plaintiff. See Stoot, 582 F.3d at 920 ("In cases involving very young child victims, the courts have repeatedly emphasized the need for some evidence in addition to the statements of the victim to corroborate the allegations and establish probable cause.").

### b.  Plaintiff's Statement to the Arresting Officers

The parties dispute what Plaintiff said to the Arresting Officers during his questioning at the Margaretville police station. According to Plaintiff, he said that he accidentally touched I.T.'s leg after she sat on top of his knee. PAC ¶ 52. In contrast, according to Hahl, Plaintiff said that he may have accidentally touched I.T.'s private parts once or "on a few occasions" when he removed I.T. from his lap. Police Report at 3; Hr'g Tr. 145; Hr'g Tr. 185.

12

At this stage of the litigation, the Court must view the facts in the light most favorable to Plaintiff. In turn, Plaintiff's statement to the Arresting Officers cannot be considered a piece of evidence in support of the officers' conclusion that probable cause existed. Cf. Milfort v. Prevete, 922 F. Supp. 2d 398, 406 (S.D.N.Y. 2013) ("If a jury were to credit Plaintiff's version of events, it could conclude that the police lacked probable cause to arrest Plaintiff."). Under no circumstances would the accidental touching of another person's leg on a single occasion constitute sexual abuse in the first degree. Presumably the recording of Plaintiff's statement, which is not currently in the record, will clarify this dispute. See Police Report at 2 (describing video recording of interview); Hr'g Tr. 2 (describing Plaintiff's receipt of the video recording).

### c.  Advice of A.D.A. Hubbard

Prior to arresting Plaintiff, the Arresting Officers had a conversation with A.D.A. Hubbard. Police Report at 3. Hubbard "advised that an arrest for Sexual Abuse 1st [degree] would be warranted." Id. "[P]olice officers must be able to rely on the advice of prosecutors. The judicial system depends upon this reliance." Dale v. Kelley, 908 F. Supp. 125, 138 (W.D.N.Y. 1995), aff'd, 95 F.3d 2 (2d Cir. 1996); see also Strawn v. Holohan, No. 104-CV-1292, 2008 WL 65586, at *6 (N.D.N.Y. Jan. 4, 2008) ("[T]he fact that Zwingelberg consulted with the District Attorney's office prior to Strawn's arrest, while not dispositive of the issue, is a factor supporting the reasonableness of Holohan's actions.").

However, the record before the Court does not provide the content of this conversation. As described above, Plaintiff disputes that he made the statement attributed to him, which the Arresting Officers may have relayed to Hubbard. Alternatively, the Arresting Officers may have omitted important details of Plaintiff's alleged statement, which would be relevant to any

probable cause determination, such as whether Plaintiff touched I.T.'s "private parts" once or more than once and whether such touching was accidental or not. The value of Hubbard's advice depends on the information that the Arresting Officers provided him. See Muhammad v. City of Peekskill, No. 06-CV-1899, 2008 WL 4525367, at *7 (S.D.N.Y. Sept. 30, 2008) (finding that "it is not implausible to believe that with the benefit of discovery Plaintiff might be able to prove that Officer Vazeos told ADA Chartier" incorrect or false information, negating the value of the assistant district attorney's advice); cf. Bermudez v. City of New York, 790 F.3d 368, 375 (2d Cir. 2015) ("[I]f the ADA was simply not informed of the alleged problems with the evidence, then he could not be a superseding cause of the deprivation of Bermudez's due process rights." (citing Myers v. County of Orange, 157 F.3d 66, 73–74 (2d Cir. 1998))).

    In sum, on the record as it exists now, a reasonable fact-finder could conclude that the information upon which the Arresting Officers relied to arrest Plaintiff did not indicate that "a fair probability of criminal activity existed." Fowler v. Robinson, No. 94-CV-836, 1996 WL 67994, at *6 (N.D.N.Y. Feb. 15, 1996). The Court also concludes that these issues of fact preclude a determination that the Arresting Officers possessed arguable probable cause to arrest Plaintiff, and therefore the Court cannot determine at this time whether their actions are protected by qualified immunity. See, e.g., Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) ("Though '[i]mmunity ordinarily should be decided by the court,' that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)). As described above, discovery is required to understand the information possessed by the Arresting Officers at the time of Plaintiff's arrest.

Accordingly, the State Motion to dismiss the false arrest claim against the Arresting Officers is denied.

### 3. *Cynthia L. Bogdan-Cumpston*

On December 17th, Bogdan-Cumpston was a caseworker employed by DSS. PAC ¶ 25. Specifically, she worked in DSS's Child Protective Services' unit. Id. Plaintiff does not allege that Bogdan-Cumpston directly effected Plaintiff's arrest; rather, he argues that Plaintiff "importuned" the Arresting Officers through her improper interviews of I.T., and is therefore also responsible for Plaintiff's false arrest. Id. ¶¶ 137–45.

"It is well-established that a successful Section 1983 claimant must prove 'that the defendant caused the deprivation of his or her rights.'" Camac v. Long Beach City Sch. Dist., No. 09-CV-5309, 2011 WL 3030345, at *7 (E.D.N.Y. July 22, 2011) (quoting Taylor v. Brentwood Union Free Sch. Dist., 143 F.3d 679, 686 (2d Cir. 1998)); see also Soto v. City of New York, 132 F. Supp. 3d 424, 443 (E.D.N.Y. 2015) ("Because a Section 1983 claim is a constitutional tort, the claims are 'guided by common-law principles of tort,' and a plaintiff must establish causation." (quoting Wray v. City of New York, 490 F.3d 189, 193 (2d Cir. 2007))). In the context of a false arrest claim, "[a] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charged filed, will not be held liable for false arrest or malicious prosecution." Carmellino v. District 20 of N.Y.C. Dept. of Educ., No. 03-CV-5942, 2006 WL 2583019, at *61 (S.D.N.Y. Sept. 6, 2006) (quoting Levy v. Grandone, 789 N.Y.S.2d 291, 293 (App. Div. 2005), lv. denied, 83 N.E.2d 711 (N.Y. 2005)); see also Lozada, 92 F. Supp. 3d at 91 (holding that informant "cannot be said to have 'instigated'

15

Plaintiff's arrest" because "Trooper Nolan had the opportunity to observe Plaintiff and make his own determination as to whether her behavior warranted arrest."). An officer's independent decision to arrest a suspect normally "severs the causal connection" between the informant and the arrestee. Soto, 132 F. Supp. 3d at 443 (citing Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999)).

However, an informant may be held responsible if she "takes 'an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act,' with the intent to confine plaintiff." TADCO Constr. Corp. v. Dormitory Auth. of State of N.Y., 700 F. Supp. 2d 253, 269 (E.D.N.Y. Mar. 19, 2010) (quoting Lowmack v. Eckerd Corp., 757 N.Y.S.2d 406, 408 (App. Div. 2003)). "Such an active role includes the provision of false information leading to an arrest, where the defendants 'lacked reasonable cause for their belief in the plaintiff's culpability.'" Id. (quoting Weintraub v. Bd. of Educ. of City of N.Y., 422 F.Supp. 2d 38, 56 (E.D.N.Y. 2006)).

Here, Plaintiff does not allege that Bogdan-Cumpston insisted or even recommended to the Arresting Officers that Plaintiff be charged. Cf. TADCO Constr. Corp., 700 F. Supp. 2d at 269 (finding that civilian complainant who "demanded" an arrest may be liable for false arrest claim); Fowler, 1996 WL 67994, at *6 (finding that caseworkers may be liable for false arrest since they were "rather insistent that [defendant] be charged"). Nevertheless, Plaintiff has made many allegations regarding the manner in which Bogdan-Cumpston interviewed I.T. Specifically, Plaintiff alleges that Bogdan-Cumpston violated the letter or spirit of the New York Social Services Law and caseworkers' professional standards by (1) interviewing I.T. without an interpreter; (2) failing to interview I.T. at a Child Advocacy Center, which is designed to

16

facilitate the proper forensic interviewing of children; (3) asking I.T. questions while simultaneously taking notes; (4) failing to take audio and/or video recordings of the interviews; (5) using anatomical hand puppets; and (6) interviewing I.T. multiple times. PAC ¶¶ 26–34, 44.

Even viewed in the light most favorable to Plaintiff, the County Defendants are correct that these allegations do not constitute "the provision of false information" to the Arresting Officers, which would demonstrate an "intent to confine" Plaintiff. County Opp'n at 8; TADCO Constr. Corp., 700 F. Supp. 2d at 269; see also Camac, 2011 WL 3030345, at *8 (finding that false arrest claim was adequately pled against complainant who knowingly provided false information to police). While Plaintiff makes conclusory statements that Bogdan-Cumpston gave "false information to the police," PAC ¶ 139, none of the factual allegations state that Bodgan-Cumpston fabricated evidence or lied about her conversations with I.T.

This Circuit provides "unusual deference in the abuse investigation context" to caseworkers, Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 104 (2d Cir.1999), and Plaintiff's allegations regarding Bogdan-Cumpston's "incomplete or inaccurate" investigation do not constitute an independent constitutional violation, Pace v. Montalvo, 186 F. Supp. 2d 90, 99 (D. Conn. 2001); see also Wilkinson, 182 F.3d at 106 ("[A] mere failure to meet local or professional standards, without more, should not generally be elevated to the status of constitutional violation."). Absent allegations of "material perjury or fabricated evidence," this Court cannot hold Bogdan-Cumpston liable for the Arresting Officers' decision to arrest Plaintiff. Cf. Walker v. City of New York, 63 F. Supp. 3d 301, 313–14 (E.D.N.Y. 2014) (holding that caseworkers are entitled to qualified immunity when they instigate a deprivation of liberty absent material perjury or fabricated evidence), aff'd, 621 F. App'x 74 (2d Cir. 2015).

17

Accordingly, the County Motion to dismiss the false arrest claim is granted.

      *4. Nancy Millen*

Nancy Millen was a guidance counselor at MCSD on December 17, 2015. PAC ¶ 20.
Even assuming that Millen acted under the color of state law when she interviewed I.T. and
contacted Bogdan-Cumpston, <u>Arum v. Miller</u>, 273 F. Supp. 2d 229, 235 (E.D.N.Y. 2003), it
cannot be said that Millen caused Plaintiff's arrest.

      Plaintiff alleges that Millen interviewed I.T. after she received a report from a teacher that
I.T.'s grades had fallen, and then contacted Bogdan-Cumpston for further investigation. PAC
¶¶ 23–25. While Plaintiff later alleges that Millen "importuned" the Arresting Officers, PAC
¶ 105, he does not present any allegations that Millen provided the police with falsified
information or encouraged them to arrest Plaintiff. In fact, Plaintiff does not even allege that
Millen spoke to the Arresting Officers about I.T. or Plaintiff. Even if Millen acted improperly in
her initial consultation with I.T., PAC ¶ 24, no reasonable fact-finder could conclude that Millen
was the "but for" cause of Plaintiff's arrest, <u>Zahrey v. Coffey</u>, 221 F.3d 342, 352 n.8
(2d Cir. 2000).

      Accordingly, the MCSD Motion to dismiss the false arrest claim is granted.

**B. Illegal Seizure**

      Plaintiff also claims that he suffered an unreasonable seizure, in violation of the Fourth
Amendment, when the Arresting Officers detained him at the police station in Margaretville
without probable cause. PAC ¶¶ 49, 73. Defendants argue that Plaintiff voluntarily went to the
police station, and therefore he was not detained for purposes of the Fourth Amendment.
<u>E.g.</u> Dkt. No. 17-1 ("County Defendants' Memorandum") at 6.

"A person is seized by the police . . . when the officer, by means of physical force or show of authority, terminates or restrains [her] freedom of movement through means intentionally applied." Brendlin v. California, 551 U.S. 249, 254 (2007). "To explain when a sufficient 'show of authority' effects restraint, the Supreme Court has relied on a totality-of-the-circumstances test, asking whether a reasonable person would believe that he was 'not free to leave,'" Salmon, 802 F.3d at 251 (quoting INS v. Delgado, 466 U.S. 210, 215 (1984)), or "would feel free to decline the officers' requests or otherwise terminate the encounter," id. (quoting Florida v. Bostick, 501 U.S. 429, 436 (1991)).

Based on the allegations in the PAC, no reasonable person would believe that the Arresting Officers seized Plaintiff upon requesting his presence at the police station for an interview. Plaintiff does not present any allegations that the Arresting Officers acted threateningly or suggested that Plaintiff could not decline their request. If the Arresting Officers' conduct constituted a seizure in this instance, "any person's voluntary visit to a police facility might be enough to render that person seized." Emanuel v. Griffin, No. 13-CV-1806, 2015 WL 1379007, at *12 (S.D.N.Y. Mar. 25, 2015).

Accordingly, the Motions to dismiss the illegal seizure claim are granted.

### C. Malicious Prosecution

#### 1. Applicable Law

In order to establish a malicious prosecution claim under § 1983, a plaintiff must demonstrate "(1) that the defendant initiated a prosecution against plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with [actual] malice, . . . (4) that the prosecution terminated in plaintiff's favor, . . . [and] (5) a

19

sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Noga v. City of Schenectady Police Officers, 169 F. Supp. 2d 83, 90 (N.D.N.Y. 2001) (quoting Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)).

### 2. Brian Dengler and Steven Hahl

Plaintiff brings a claim for malicious prosecution arising from the charges brought pursuant to his arrest. The State Defendants first argue that the Arresting Officers were not the "but for" cause of Plaintiff's prosecution; instead, Hubbard's decision to bring charges severed the causal link between the officers' decision to arrest Plaintiff and his subsequent prosecution. State Defs.' Mem. at 6–7.

The first element of a malicious prosecution claim, which requires a defendant "to have initiated a prosecution," reaches the issue of causation. "In malicious prosecution cases against police officers, plaintiffs [meet] this first element by showing that officers brought formal charges and had the person arraigned, or filled out complaining and corroborating affidavits, or swore to and signed a felony complaint." Lanning v. City of Glens Falls, No. 116-CV-132, 2017 WL 922058, at *6 (N.D.N.Y. Mar. 8, 2017) (quoting Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005)). Alternatively, "a defendant may be said to commence or continue a prosecution if that defendant knowingly provides false information or fabricated evidence that is likely to influence the prosecutors or the grand jury." Id. (quoting Fiedler v. Incandela, 222 F. Supp. 3d 141, 163 (E.D.N.Y. 2016)).

Here, the PAC does not specify the division of labor between the Arresting Officers and Hubbard with regard to Plaintiff's arraignment and prosecution. Thus the Court cannot conclude that the Arresting Officers "brought formal charges and had the person arraigned, or filled out

complaining and corroborating affidavits, or swore to and signed a felony complaint." But

Plaintiff has alleged that the Arresting Officers knowingly provided false information to

Hubbard—in the form of Plaintiff's false confession—that would have likely influenced the

prosecution. PAC ¶¶ 52, 72. Therefore, at this stage, Plaintiff has alleged sufficient facts

indicating that the Arresting Officers caused Plaintiff's prosecution.

The State Defendants also argue that the malicious prosecution claim must be dismissed

because probable cause existed at the time of Plaintiff's arrest, State Defs.' Mem. at 7–8, and

because Plaintiff has only provided conclusory allegations that the Arresting Officers acted with

malice, id. at 9. As discussed above, however, issues of fact preclude a determination that the

Arresting Officers possessed probable cause to arrest Plaintiff on the record currently before the

Court.[5] In addition, at this stage in the litigation, "a specific assertion of malice is only required

wherein the complaint creates a presumption that there was probable cause for the

prosecution . . . ." Donnelly v. Morace, 556 N.Y.S.2d 605, 606–07 (App. Div. 1990); see also

Khan v. Ryan, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) ("In most cases . . . 'malice may be

inferred from the lack of probable cause.'" (quoting Lowth v. Town of Cheektowaga, 82 F.3d

563, 572 (2d Cir. 1996))). Since the Arresting Officers have not demonstrated that probable

cause existed at the time of Plaintiff's arrest as a matter of law, Plaintiff's allegations that the

Arresting Officers acted with malice are sufficient to survive the State Motion.

---

[5]  The Court notes that the probable cause inquiry for false arrest claims often differs from
the probable cause inquiry for malicious prosecution claims. E.g., Boyd v. City of New York,
336 F.3d 72, 75–77 (2d Cir. 2003). However, if a plaintiff—as is the case here—"does not allege
that there was any difference in the facts known to the police officers between arrest and
arraignment," the Court need "analyze only the existence of probable cause at the time of []
arrest[]." Lanning, 2017 WL 922058, at *6.

Accordingly, the State Motion to dismiss Plaintiff's malicious prosecution claim is denied.

### 3.  *Cynthia L. Bogdan-Cumpston and Nancy Millen*

In contrast, Plaintiff has not presented sufficient facts indicating that either Bogdan-Cumpston or Millen initiated Plaintiff's prosecution. As discussed above, neither Bodgan-Cumpston nor Millen can be held responsible for Plaintiff's arrest. Plaintiff has not presented any additional allegations that Bogdan-Cumpston or Millen encouraged Plaintiff's prosecution or knowingly provided Hubbard with false information. Accordingly, the County and MCSD Motions to dismiss the malicious prosecution claims against Bogdan-Cumpston and Millen are granted.

### D.  Conspiracy to Violate Civil Rights

"To state a claim for a § 1983 conspiracy, a plaintiff must allege '(1) an agreement between two state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" Magnotta v. Putnam Cnty. Sheriff, No. 13-CV-2752, 2014 WL 705281, at *8 (S.D.N.Y. Feb. 24, 2014) (quoting Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. Ciambriello v. County of Nassau, 292 F.3d 325, 325 (2d Cir. 2002); see also Webb v. Goord, 340 F.3d 105, 110–11 (2d Cir. 2003) (holding that the plaintiff "must provide some factual basis supporting a meeting of the minds" to maintain a conspiracy action); Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a

motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" Flores v. Levy, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting Twombly, 550 U.S. at 554).

Here, Plaintiff's conspiracy allegations are misdirected. At most, he alleges that the named defendants conspired "to disregard proper procedure" with respect to the third interview of I.T., which in turn caused Plaintiff's constitutional injuries. Cross-Mot. at 23. However, as discussed above, failure to follow local or professional standards does not constitute a constitutional injury, Wilkinson, 182 F.3d at 106, and any agreement to do so would not form the basis of a viable conspiracy claim pursuant to § 1983. Accordingly, Plaintiff's conspiracy claim is dismissed.[6]

**E.  Monell Claims**

In addition to his claims against Bogdan-Cumpston and Millen in their individual capacities, Plaintiff brought suit against their employers—Delaware County and MCSD, respectively. "Municipal entities may be held liable for unconstitutional acts *by their employees* if the challenged actions were performed pursuant to a municipal policy or custom that caused the plaintiff's injury." Hunter v. Town of Shelburne, No. 10-CV-206, 2011 WL 5562809, at *2

---

[6]  The PAC also indicates that Plaintiff is bringing a conspiracy claim against the named defendants pursuant to § 1985, PAC ¶ 181, though the Cross-Motion does not provide any support for such claim. In any event, the PAC presents no allegations that the named defendants acted with discriminatory animus, which is a required element in a § 1985 claim. See Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994) (dismissing § 1985 claim because "[t]he complaint is devoid of any allegation that the alleged conspiracy was undertaken with any racial or class-based animus"). Therefore, Plaintiff's § 1985 claim is dismissed.

(D. Vt. Nov. 13, 2011) (emphasis added) (citing Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978)).

Here, Plaintiff has not presented viable claims of unconstitutional acts committed by Delaware County or MCSD's employees. Therefore, Plaintiff's Monell claims against Delaware County and MCSD must be dismissed.

### F.  State Law Claims

Since some of Plaintiff's claims under federal law survive Defendants' Motions, the Court maintains original jurisdiction over this action and must exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(a). "The elements of false arrest and malicious prosecution under § 1983 are 'substantially the same' as the elements under New York law." Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003) (quoting Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992)). Therefore, Plaintiff's false arrest and malicious prosecution claims pursuant to New York law survive against the Arresting Officers and are dismissed against Bogdan-Cumpston and Millen. To the extent that Plaintiff has made a state law claim regarding his alleged seizure at the Margaretville police station, that claim is dismissed against all of the individually named defendants for the reasons described above.

### G.  Motion to Amend

Defendants argue that Plaintiff's Cross-Motion should be denied on futility grounds because the changes proposed in the PAC do not address the purported deficiencies in their Motions. "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." Cowles v. Yesford, No. 99-CV-2083, 2001 WL 179928, at *3 (N.D.N.Y. Feb. 22, 2001) (quoting Chan v. Reno, 916 F.

24

Supp. 1289, 1302 (S.D.N.Y. 1996)). Because the Court has determined that the PAC adequately alleges false arrest and malicious prosecution claims against the Arresting Officers, Plaintiff's proposed amendments are not futile. Defendants raise no other reasons why leave to amend should not be granted, and the Court is aware of none. The Court therefore finds that justice requires allowing Plaintiff to amend his Complaint.

V.    **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Cross-Motion (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED**, that Plaintiff file the Proposed Amended Complaint (Dkt. No. 24-5) within fourteen days of this Memorandum-Decision and Order; and it is further

**ORDERED**, that the State Motion (Dkt. No. 16) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** as to Plaintiff's § 1983 conspiracy claim, § 1985 claim, and state law illegal seizure claim. The Motion is otherwise **DENIED**; and it is further

**ORDERED**, that the County Motion (Dkt. No. 17), is **GRANTED**; and it is further

**ORDERED**, that MCSD Motion (Dkt. No. 14), is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court **TERMINATE** defendants Delaware County, Commissioner of the Delaware County Department of Social Services, Margaretville Central School District, New York State Child Abuse and Maltreatment Register, Cynthia Bogdan-Cumpston, Nancy Millen, and John or Jane Does; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

25

**IT IS SO ORDERED.**

DATED:      December 04, 2017
              Albany, New York

Lawrence E. Kahn
U.S. District Judge